IN RE:

Apelación de la decisión del Superintendente General de Elecciones en sesión del 7 de diciembre de 1959 en relación con enmiendas a Reglas para Determinar la Validez de las Solicitudes de Transferencias.

*Número:* 7. *Resuelto:* 19 de enero de 1960.

1102

*Carmelo J. Gorritz,* Superintendente General de Elecciones, Interino, apelado; *Luis A. Archilla Laugier,* Representante de la Junta Estatal de Elecciones del Partido Independentista Puertorriqueño, apelante; *Samuel R. Quiñones,* Representante en la Junta Estatal de Elecciones del Partido Popular Democrático; *Leopoldo Figueroa,* Representante en la Junta Estatal de Elecciones del Partido Estadista Republicano.

EL JUEZ PRESIDENTE SEÑOR NEGRÓN FERNÁNDEZ emitió la opinión.

En la sesión ordinaria de la Junta Estatal de Elecciones correspondiente al día 7 de diciembre de 1959, el Superintendente General de Elecciones, Interino, sometió a la Junta la siguiente cuestión:

"Para someter a la consideración de la Junta para Enmiendas o Modificaciones en las Reglas de las Solicitudes de Transferencia.

"En el proceso de revisión de las solicitudes de transferencia, he encontrado que, de acuerdo con las reglas hay limita-

ciones en la discreción que podrían ser modificadas si se consideran determinadas situaciones que surgen imprevistas, como, por ejemplo:

1. Un elector que no puso el nombre del precinto donde vive actualmente pero a continuación puso el barrio o calle 'donde vivo', que puede identificarse si dijera 'Pájaros Americanos', se sabe a ciencia cierta que se refiere al precinto de Bayamón, por no existir ese barrio en ningún otro municipio de Puerto Rico, y sólo en Bayamón. Creemos que un caso así debe ser admitido, si lo aprueba la Junta.

2. Otros casos, personas que [no] pusieron el tiempo que residen en el nuevo precinto de su residencia. Creemos es innecesario pues como la exigencia de tiempo es la de un año para las elecciones, bastaría con un día o menos al tiempo de llenar y jurar la solicitud de transferencia.

Respetuosamente sometido a la consideración de la Junta Estatal de Elecciones por el Superintendente General de Elecciones, Interino."

La propuesta del Superintendente tendía a modificar las Núms. 2 y 3 de unas reglas aprobadas por la Junta Estatal de Elecciones el día 9 de noviembre de 1959, puestas en vigor el día 17 del mismo mes y año, como normas directivas en el examen y determinación de validez de las solicitudes de transferencia de inscripción de electores del precinto o municipio en el que figuran inscritos al precinto o municipio de su nueva residencia, según las disposiciones de la sección 27(c) de la vigente Ley Electoral.[1]

La propuesta del Superintendente fue sometida a votación y no recibió la unanimidad de votos de los miembros de la Junta representantes de los partidos políticos, por lo cual, actuando según lo dispuesto en el párrafo 4 de la sección 12 de la Ley Electoral,[2] el Superintendente decidió

[1] Las reglas 2 y 3 de referencia son las siguientes:
"2.—La transferencia *no vale* si en ella no expresa el precinto donde el elector tiene su residencia actualmente.
"3.—La transferencia *no vale* si no se expresa en ella el tiempo que el elector ha vivido en el precinto de su nueva residencia."

[2] El párrafo 4 de la sección 12 citada dispone lo siguiente:
"Para que tenga efectividad y validez, todo acuerdo de la Junta Insular de Elecciones deberá ser aprobado por unanimidad de los votos de los miem-

la cuestión, siendo su decisión favorable a la adopción de las enmiendas propuestas a las referidas reglas.

De dicha decisión apeló para ante el Juez Presidente del Tribunal Supremo el representante en la Junta Estatal de Elecciones del Partido Independentista Puertorriqueño, siguiendo lo dispuesto en el párrafo 4 de la sección 12 citada, y en la sección 13(d) de la propia Ley Electoral en vigor.[3]

El presente recurso[4] lo funda el apelante en que la sección 27(c) de la Ley Electoral, al proveer que "Los electores que, habiendo votado en las elecciones generales inmediatamente precedentes en un precinto o municipio, cambien su residencia a otro precinto o municipio, no necesitan inscribirse nuevamente como electores, en el precinto o municipio de su nueva residencia, sino que bastará para que puedan votar en dicho precinto o municipio de su nueva residencia, con que soliciten del Superintendente General de Elecciones la transferencia de su inscripción del precinto o municipio en que votaron en las elecciones generales inmediatamente precedentes al precinto o municipio de su nueva residencia, mediante solicitud jurada que exprese (1) el

---

bros de dicha Junta representantes de los partidos políticos, presentes al tiempo de efectuarse la votación. Cualquier cuestión sometida a la consideración de dicha Junta que no recibiere tal unanimidad de votos será decidida, en pro o en contra, por el Superintendente General de Elecciones cuya decisión se considerará como la decisión de la Junta Insular de Elecciones y podrá apelarse por cualquier miembro de dicha Junta Insular de Elecciones representante de un partido político en la forma provista en la sección 13(d) de esta ley."

[3] La sección 13(d) citada, en lo pertinente, dispone:

"Sección 13d.—La apelación de cualquier decisión del Superintendente General de Elecciones rendida conforme se provee en el párrafo cuarto de la sección 12 de esta ley será para ante el Juez Presidente del Tribunal Supremo de Puerto Rico. La apelación deberá hacerse por escrito con expresión de sus fundamentos de hecho y de derecho. . . . .

" . . . . . . . . .

" . . . Toda apelación de una decisión del Superintendente General de Elecciones para ante el Juez Presidente del Tribunal Supremo deberá hacerse en la misma sesión en que se tome la decisión apelada, y antes de que se levante dicha sesión."

[4] El 19 de diciembre se completó el expediente de apelación de conformidad con resolución nuestra del 11 del propio mes.

precinto en que aparece su inscripción; (2) el precinto o municipio en el cual tiene establecida su nueva residencia; (3) su dirección al tiempo de pedir la transferencia expresando el barrio con cualquier seña posible de la casa o finca en que vive si vive en la zona rural, o la calle y el número de la casa si lo tuviere si vive en zona urbana; (4) que es elector capacitado y que en las elecciones generales inmediatamente siguientes tendrá derecho a votar en dicho precinto o municipio de su nueva residencia; y (5) el tiempo que hace que vive en el precinto o municipio de su nueva residencia," establece requisitos que deben cumplirse estrictamente para que surja el derecho a la transferencia de inscripción, sin el cual cumplimiento no puede hacerse una transferencia válida, no siendo de la competencia de la Junta Estatal de Elecciones ni del Superintendente General de Elecciones, y sí solamente de la Asamblea Legislativa, modificar dichos requisitos.

La sección 27 (c) de la Ley Electoral, según quedó enmendada por la Ley Núm. 5 de 6 de septiembre de 1955, dispone que las solicitudes de transferencia de inscripción sólo podrán hacerse "en el año anterior al año en que se celebren elecciones generales, entre el día primero de julio y el día de noviembre desde el cual quede un año hasta el día anterior al de dichas elecciones." [5] Igualmente provee lo siguiente: "Inmediatamente que reciba tal solicitud el Superintendente General de Elecciones comprobará las circunstancias de que el elector que solicita la transferencia de su inscripción se encuentra inscrito en el precinto o municipio en que jura estar inscrito, y si encuentra que es así dará de baja a dicho elector en el precinto o municipio en que estaba inscrito y

---

[5] Antes de la enmienda sufrida por esta sección por la Ley Núm. 87 de 20 de junio de 1955, las solicitudes de transferencia de inscripción debían hacerse entre el *primero de diciembre* del año anterior al de las elecciones y el *veinte de marzo* del año de las elecciones. Esta sección fue nuevamente enmendada, en cuanto al término para presentar las solicitudes, por la Ley Núm. 5 de 6 de septiembre de 1955.

lo inscribirá en el precinto o municipio de su nueva residencia, o sea en el precinto o municipio para el cual solicita inscripción el elector. Si el Superintendente General de Elecciones, al hacer la comprobación antes mencionada, encontrare diferencias contradictorias, investigará las circunstancias que considere necesarias para adquirir el conocimiento de que la transferencia es correcta. Pero si de la investigación resultare haberse cometido alguna falta de las penadas en la ley, será deber del Superintendente General de Elecciones dar cuenta a la Corte de Distrito a que corresponda el precinto o municipio en que el peticionario jura estar inscrito para el procedimiento correspondiente contra los culpables. Cualquier persona que voluntaria, intencional y maliciosamente, solicitara la transferencia de su inscripción con arreglo a este apartado (c) a sabiendas de que no tiene derecho a tal transferencia incurriría en delito grave, y convicta que fuere, será castigada con pena de presidio por término mínimo de un año. De todas las peticiones de transferencia que reciba con arreglo a este apartado (c) el Superintendente General de Elecciones preparará una lista para cada precinto por barrios y por riguroso orden alfabético, sobre la base del precinto o municipio del cual se hace la transferencia de inscripción solicitada; y deberá hacer otra lista para cada precinto, por barrios, y por riguroso orden alfabético, sobre la base del precinto o municipio al cual se hace la transferencia de inscripción solicitada, y los electores que aparezcan en esta segunda lista podrán excluirse con arreglo al procedimiento establecido en las secs. 78, 79, 81 y 82 de este título."

## I

No habiendo otro texto para fijar el alcance de las enmiendas aquí impugnadas, que el que aparece de la propuesta del Superintendente ya transcrita, el mismo debe fijarse teniendo presente las limitaciones que surgen de sus propios términos y de los ejemplos con que se ilustra dicha propuesta.

La primera situación planteada por el Superintendente debe entenderse que va dirigida a afrontar sólo la omisión del elector de llenar, en su solicitud jurada de transferencia, el blanco correspondiente al apartado que dice "Precinto donde tengo mi residencia actualmente", pero que expresó en el apartado que dice "Barrio o calle donde vivo" el nombre del *barrio* en que vive, no existiendo otro barrio así nombrado en ningún otro precinto o municipio en Puerto Rico, y sí solamente en el precinto cuyo nombre fue omitido en el apartado indicado. (6)

No debe entenderse que el Superintendente propusiera que se aceptara la transferencia si el elector expresaba en el blanco correspondiente al apartado que dice "Barrio o calle donde vivo" sólo el nombre de una *calle*, y no el de un *barrio* que solamente existiera en un precinto o municipio en Puerto Rico, ya que el ejemplo con que él ilustró su propuesta tiene por base el *barrio*, que es la unidad electoral de los precintos,

---

(6) Como acertadamente señala el representante del Partido Estadista Republicano en la Junta Estatal de Elecciones, si el elector ha omitido expresar en el apartado correspondiente de su solicitud que el precinto en que tiene su residencia actualmente es el de Dorado, pero en el correspondiente apartado indica que *vive* en el barrio *Higuillar*, no existiendo otro barrio de ese mismo nombre en precinto o municipio alguno en Puerto Rico excepto en el municipio o precinto de Dorado, su transferencia se autoriza al precinto de Dorado y se da de baja como elector en el precinto en que figuraba inscrito y votó en las elecciones inmediatamente precedentes.

La propuesta del Superintendente no admite, sin embargo, la transferencia del elector al precinto de Dorado, si aquél expresa que el barrio donde vive al momento de jurar su solicitud es el barrio *Espinosa*, pues hay otro barrio del mismo nombre en el precinto de Vega Alta, además de haberlo en el precinto de Dorado, o que el barrio donde vive es el barrio *Río Lajas*, pues hay otro barrio del mismo nombre en el precinto de Toa Alta, según los propios registros electorales.

Tampoco admite la transferencia si el barrio donde expresa el elector que vive es el de *Collores*, pues barrios de ese nombre los hay, según los registros electorales, en los precintos de Humacao, Juana Díaz, Jayuya, Las Piedras, Orocovis y Yauco; o si el barrio que indica es el de *Rincón*, pues existen barrios de ese nombre, como unidades electorales, en los precintos de Cayey, Cidra, Gurabo y Sabana Grande, aparte de que Rincón es también un precinto en sí correspondiente al municipio del mismo nombre.

según la ley, y no las calles. La mención que en su propuesta hace el Superintendente a "calle" cuando dice que el elector "puso el barrio o calle 'donde vivo' " sólo tiende a identificar el apartado de la solicitud jurada a que está haciendo referencia y no a expresar juicio sobre la suficiencia de la información dada por el elector acerca del precinto de su nueva residencia a base de la mención de una mera calle.

La segunda de las situaciones planteadas por el Superintendente va dirigida a afrontar la omisión del elector de llenar en su solicitud de transferencia sólo el blanco correspondiente al apartado que dice "Tiempo que vivo en él", refiriéndose al precinto de su nueva residencia, en la fecha en que juró su solicitud.

## II

En las dos situaciones apuntadas el elector omitió dar información que la ley requiere. Pero el propósito de la ley es claro: que el Superintendente, con los datos suministrados por el elector, y con las constancias de los registros electorales, puede hacer la determinación de que la transferencia es correcta si éste, el día de las elecciones, ha de reunir los requisitos de capacidad legal para votar en las mismas. En cuanto al Superintendente, la cuestión se reduce a examinar si, independientemente de sus facultades y deberes de comprobación e investigación, él está en condiciones de hacer, con los datos suministrados por el elector, una determinación de corrección de transferencia, y si la omisión de alguno de los datos que la ley requiere debe derrotar el derecho del elector a figurar en las "listas de transferencias de inscripciones", a pesar de que el Superintendente pueda llegar, con los datos suministrados y los obrantes en su poder, en el cumplimiento celoso de sus deberes, a la determinación de que dicha transferencia es correcta.

Ningún precepto de la ley vigente sobre la materia declara nula una solicitud de transferencia en la que el elec-

tor omita expresar alguno de los datos informativos que la ley enumera. Debiendo interpretarse las leyes que reglamentan el ejercicio del derecho al voto liberalmente en favor de ese fundamental derecho del ciudadano, no puede inferirse, en ausencia de tal precepto expreso, que una omisión que no produzca incertidumbre en el Superintendente sobre las cualificaciones del elector—porque del resto de los datos consignados en la solicitud y las demás constancias en los registros electorales pueda con certeza constatar la corrección y procedencia de dicha transferencia—haya de tener el efecto de hacer insuficiente la solicitud y de privar al elector de su derecho a figurar en las "listas de transferencias de inscripciones" del precinto de su nueva residencia; inscripción ésta que así transferida está sujeta al procedimiento de exclusión, por las causas que la propia ley establece en sus secciones 29, 30, 31, 32 y 32 (a) tanto para los electores que figuren en dichas listas, como en las "listas provisionales de inscripciones" y en la "lista de electores inscritos el año de las elecciones". En tales circunstancias el elector ha establecido *prima facie* su derecho a la transferencia, y de ese derecho no puede privársele sin un debido proceso de ley.

En la primera de las situaciones planteadas por el Superintendente—la omisión de expresar el elector el *precinto* de su nueva residencia pero habiendo expresado el *barrio* "donde vivo" al momento de hacer su solicitud, existiendo solamente un barrio en Puerto Rico de ese nombre—la solicitud cumple sustancialmente con el estatuto, ya que siendo el *barrio*, por ley, la unidad electoral de los precintos, y no habiendo la posibilidad de que la transferencia sea hecha a un precinto distinto de aquel en que reside el elector, el Superintendente tiene suficiente información en la solicitud sobre ese extremo para hacer la determinación, a base de sus propios registros electorales, de que la transferencia es correcta.

En la segunda de las situaciones planteadas por el Superintendente, la omisión del elector de expresar el tiempo que vive en el precinto de su nueva residencia, tampoco hace insuficiente la solicitud.

El período dentro del cual un elector que figura en las "listas provisionales de electores" (por haber votado en las elecciones inmediatamente precedentes) debe solicitar su transferencia del precinto en que figura inscrito a otro precinto, por haber cambiado su residencia, lo fija la sección 27(c) de la Ley Electoral, según quedó enmendada por la Ley Núm. 5 de 6 de septiembre de 1955, entre el primero de julio y el día de noviembre *desde el cual quede un año hasta el día anterior* al de las elecciones. En consecuencia, un elector que dentro de dicho período solicite su transferencia, pero omita expresar en su solicitud jurada cuánto tiempo hace que vive en el sitio de su nueva residencia tendrá, el día de las elecciones, más de un año de residencia en el precinto al que se transfiera su inscripción, que es uno de los requisitos para poder votar en las mismas.

Cuando el período fijado por la ley para hacer tales solicitudes lo era entre el *primero de diciembre del año anterior* al de las elecciones y el *veinte de marzo del año* de las elecciones (según la ley electoral antes de la primera enmienda de que fue objeto la sección 27(c) por la Ley Núm. 87 de 20 de junio de 1955) una solicitud en la que el elector no expresara cuánto tiempo hacía que vivía en el precinto de su nueva residencia era insuficiente para que el Superintendente autorizara la transferencia, ya que tal omisión producía incertidumbre en cuanto a si el elector habría de llenar el requisito de un año de residencia en el nuevo precinto el día de las elecciones, pues aunque hiciera su solicitud el primer día del término fijado para ello—primero de diciembre del año anterior al de las elecciones—el año nunca se hubiera cumplido para el día de las elecciones.

■ La cuestión surge a controversia porque al enmendar la sección 27(c) por la Ley Núm. 87 de 20 de junio de 1955 (que fijó el período para solicitar las transferencias entre el *primero de julio* y el *31 de octubre del año anterior* al de las elecciones) y por la Ley Núm. 5 de 6 de septiembre de 1955 (que es la vigente) la Asamblea Legislativa dejó subsistentes, en cuanto a la información requerida del elector en su solicitud de transferencia, los mismos datos enumerados en la ley antes de dichas enmiendas. El problema, sin embargo, es uno de suficiencia de la solicitud en cuanto a la capacidad que la persona que pide la transferencia ha de tener el día de las elecciones para votar en el precinto de su nueva residencia. El cambio hecho a la ley en cuanto al período fijado para presentar la solicitud de transferencia hace que la omisión del elector en expresar el tiempo que vive en el precinto de su nueva residencia no sea una omisión fatal, pues siempre habrá de ser más de un año al día de las elecciones, cumpliéndose así uno de los requisitos para la transferencia ya que para ser elector capacitado y poder votar en el nuevo precinto el elector ha de tener un año o más de residencia en el mismo.

■ Las múltiples garantías que la ley vigente sobre elecciones e inscripciones contiene contra el fraude, entre otras: el hecho de que el elector cuya transferencia se hace al precinto de su nueva residencia se da de baja en el precinto en que votó en las elecciones inmediatamente precedentes; que se envían a los presidentes de todos los partidos políticos, incluyendo los presidentes de los comités locales de los partidos en los precintos correspondientes, así como a los representantes de los partidos en la Junta Estatal de Elecciones, copias de las listas de electores dados de baja del precinto en que figuraban inscritos, por barrios y riguroso orden alfabético, y de las listas de electores transferidos al precinto de su nueva residencia hechas en igual forma; que estas listas se fijan al público en sitio visible por la respec-

tiva Junta Local, y que las personas que allí aparecen están sujetas al procedimiento de exclusión provisto por ley; que el elector que no reuna las cualificaciones de ley puede ser recusado aún al momento de votar; y teniendo presente que la ley no establece procedimiento alguno para que un elector cuya transferencia no es aceptada pueda obtener la revisión judicial de esa determinación adversa, hacen inevitable la conclusión—en vista de la naturaleza del derecho que se ejercita por el ciudadano—de que cuando hay de su parte un cumplimiento sustancial con la ley y la omisión de un dato en su solicitud no crea incertidumbre o envuelve riesgo alguno para una determinación del Superintendente de que la transferencia es correcta, su derecho al voto no debe perecer.

### III

La facultad y la función para llevar a cabo las transferencias de inscripción de electores de un precinto o municipio a otro precinto o municipio corresponden exclusivamente—como correctamente apunta en su alegato el representante del Partido Popular Democrático en la Junta Estatal de Elecciones—al Superintendente General de Elecciones y no a la Junta Estatal. Nada hay en la sección 27 (c) de la Ley Electoral que confiera autoridad a la Junta Estatal de Elecciones para intervenir con la facultad y función que la ley fija en el Superintendente de determinar la corrección de la transferencia solicitada, mediante la comprobación o investigación de la circunstancia de encontrarse inscrito el elector en el precinto o municipio en que jura estar inscrito, o de aquellas otras que el Superintendente "considere necesarias para adquirir el conocimiento de que la transferencia es correcta." Para ello puede hacer uso del registro de electores de que dispone por ley, formado por precintos, en el que figuran por barrios y por orden alfabético de apellidos, con constancia de las fechas de sus respectivas inscripciones y sus circunstancias personales y

dirección, todas las personas inscritas que figuran como electores de un precinto o municipio; así como del archivo, clasificado por municipios, precinto y barrios, por orden alfabético de todas las peticiones de inscripción, unidas a las cuales se encuentra el original del certificado de inscripción correspondiente y otros documentos relacionados con la exclusión y re-inscripción del mismo elector, si lo hubiere.

El párrafo 3 de la sección 4 del artículo VI de la Constitución del Estado Libre Asociado de Puerto Rico provee que "se dispondrá por ley todo lo concerniente al proceso electoral y de inscripción de electores, así como lo relativo a los partidos políticos y candidaturas." La sección 12 de la Ley Electoral vigente provee que "la Junta Estatal de Elecciones tendrá a su cargo la inspección y dirección de las elecciones en Puerto Rico, inspección y dirección que efectuará mediante esta ley y reglas y reglamentos que podrá aprobar siempre que no estén en contradicción con las disposiciones de esta ley. Para que tales reglas y reglamentos tengan efectividad y fuerza de ley deberán ser aprobados por el Gobernador y promulgados por el Secretario de Estado de Puerto Rico."([7])

En el ámbito de su autoridad la Junta Estatal de Elecciones puede, además, conforme a la sección 28 de la Ley Electoral, según enmendada, dictar reglas para revisar y corregir las listas electorales, pero dichas reglas deberán, "para que tengan eficacia y validez, ser aprobadas por el Gobernador y promulgadas por el Secretario de Estado de Puerto Rico y tales reglas nunca incluirán disposiciones que en forma alguna surtan el efecto de cancelar o anular la inscripción legal de un elector o de privarlo de su derecho al voto, o de excluirlo del registro de electores, a no ser en virtud de orden de una corte competente. . . ."

---

([7]) Igual disposición contiene la sección 4 de la Ley de Inscripciones vigente en cuanto a la inspección y dirección de la Junta Estatal de Elecciones en lo concerniente a la inscripción de nuevos electores.

 A pesar de la amplia facultad que la ley confiere a la Junta Estatal de Elecciones para inspeccionar y dirigir las elecciones en Puerto Rico, es a través de la ley y de las reglas y reglamentos que adopte conforme a la ley, que ejerce sus poderes, sin que en materia de transferencia de inscripciones, según también apunta el representante del Partido Popular Democrático en dicha Junta, sea un tribunal apelativo del Superintendente General de Elecciones. Es en este funcionario en quien sitúa la ley la función de determinar la corrección de la transferencia solicitada mediante el ejercicio de su autoridad para comprobar e investigar las circunstancias que considere necesarias a tales fines, debiendo tener presente, desde luego, tanto las disposiciones de ley pertinentes como la naturaleza y esencia del derecho que el elector que pide su transferencia ejercita, y su deber de proteger ese derecho si su determinación es que la transferencia es correcta.

 No correspondiendo, pues, a la esfera de acción de la Junta Estatal de Elecciones la determinación de la corrección de las transferencias—que, como hemos indicado, reserva la ley al Superintendente como tal—y no tratándose aquí de un acuerdo de la Junta en el ejercicio de su poder para adoptar reglas o reglamentos con la aprobación del Gobernador, la decisión del Superintendente adoptando las enmiendas por él propuestas a la Junta al no haber recaído votación unánime de los Miembros representantes de los partidos políticos, no es la decisión de la Junta que la sección 13(d) de la ley, en relación con el párrafo 4 de la sección 12, reputa como decisión apelable para ante el Juez Presidente del Tribunal Supremo.

*En consecuencia, estimo que procede desestimar, como por la presente desestimo, la apelación interpuesta.*